FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JUN 1 0 2025

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

Richard R. Barker
Acting United States Attorney
Eastern District of Washington
Nowles Heinrich
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DESIREE L. KEKAHUNA,<br><br>Defendant. | Case No. 2:25-CR-0003-RLP-2<br><br>PLEA AGREEMENT |

Plaintiff United States of America, by and through Richard R. Barker, Acting United States Attorney for the Eastern District of Washington, and Nowles Heinrich, Assistant United States Attorney for the Eastern District of Washington, and Defendant, DESIREE L. KEKAHUNA ("Defendant" or "Kekahuna"), both individually and by and through Defendant's counsel, Bryan P. Whitaker, agree to the following Plea Agreement:

1.   Guilty Plea and Maximum Statutory Penalties:

Defendant agrees to enter a plea of guilty to Count 2 of the Indictment filed on January 8, 2025, charging Defendant with False Statement, in violation of 18 U.S.C. § 1001(a)(2), a Class D felony.

Defendant understands that the following potential penalties apply:

     a.   a term of imprisonment of not more than five (5) years;

     b.   a term of supervised release of up to three (3) years;

PLEA AGREEMENT - 1

c.   a fine of up to $250,000; and

d.   a $100 special penalty assessment.

2.   Supervised Release

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

a.   5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

b.   3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

c.   2 years in prison if the offense that resulted in the term of Supervised Release is a class C or D felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3.   Potential Immigration Consequences of Guilty Plea

If Defendant is not a citizen of the United States, Defendant understands the following:

a.   pleading guilty in this case may have immigration consequences;

b.   a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

PLEA AGREEMENT - 2

c. removal from the United States and other immigration consequences are the subject of separate proceedings; and

d. no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

4. <u>The Court is Not a Party to the Plea Agreement:</u>

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a. sentencing is a matter solely within the discretion of the Court;

b. the Court is under no obligation to accept any recommendations made by the United States or Defendant;

c. the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d. the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e. the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f. the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

PLEA AGREEMENT - 3

5. Waiver of Constitutional Rights:

Defendant understands that by entering this plea of guilty Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

      (a). The right to a jury trial;

      (b). The right to see, hear and question the witnesses;

      (c). The right to remain silent at trial;

      (d). The right to testify at trial; and

      (e). The right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands Defendant retains the right to be assisted by an attorney through the sentencing and any direct appeal of Defendant's conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6. Elements of the Offense:

The United States and Defendant agree that to convict Defendant of Count Two, False Statement, in violation of 18 U.S.C. § 1001(a)(2), the United States would have to prove beyond a reasonable doubt the following elements:

*First*, on or about December 7, 2023, within the Eastern District of Washington, Defendant made a false statement;

*Second*, Defendant acted knowingly and willfully;

*Third*, the statement pertained to a matter within the jurisdiction of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF); and

*Fourth*, the statement was material to the decisions and activities of the ATF.

PLEA AGREEMENT - 4

7. <u>Statement of Facts</u>:

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement. The parties further agree and stipulate that this factual basis is simply a summary to support the plea and it does not contain all facts which could be proven by the United States. The stipulation also does not contain each and every fact known to Defendant concerning her involvement and the involvement of others in the charges set forth in the Indictment.

**Background**

On December 7, 2023, an ATF special agent and task force officer (TFO) were conducting surveillance in Spokane Valley at the residence of Defendant and co-defendant Daniel Max MEIER because MEIER was wanted on an outstanding Washington State Department of Corrections warrant. MEIER and Kekahuna were observed exiting the residence and entering a white Chevy Suburban. The ATF agent and TFO began to follow the vehicle, but the Suburban began to flee at a high rate of speed and in a risky manner. After losing sight of the vehicle at one point, the ATF agent encountered the Suburban again and put on his police lights. The Suburban ignored the ATF agent and almost struck the agent's vehicle as the Suburban again fled.

However, the Suburban became stuck in a dirt patch and the agent caught up to it. The agent exited his vehicle and approached the driver side of the Suburban, instructing both occupants to put their hands up. Kekahuna and MEIER refused,

PLEA AGREEMENT - 5

and the agent observed what appeared to be the male driver (MEIER) shove something towards defendant Kekahuna.

Kekahuna then exited the vehicle, ignored the agent's order to stop, and continued to walk away from the vehicle. The Suburban eventually became unstuck and then drove through a residential yard. MEIER then exited and fled from the vehicle. Around this time, another ATF special agent arrived, and at the direction of the first agent, attempted to locate Kekahuna and stop her.

The second ATF agent drove his vehicle in the direction Kekahuna had headed and encountered Kekahuna within a couple minutes. The agent stopped Kekahuna and when asked if she had any weapons, Kekahuna said she had a gun in her pocket. The ATF agent removed a pistol in a Kydex (inside-the-waistband-style) holster from Kekahuna's jacket pocket. The pistol was a KelTec, model P11, 9mm, with serial number 82336. It had a loaded magazine, but an empty chamber.

Kekahuna was subsequently read her *Miranda* rights and in a recorded interview with the agent and a TFO, Kekahuna insisted the firearm was hers, that she had bought two pistols (but lost one) at a pawnshop "during Covid." She said she purchased the gun at Pawn One in Spokane, but later (after the recording ended) changed it to Double Eagle Pawn. Kekahuna said MEIER's fingerprints and DNA would not be on the gun because he is not allowed to touch it (he was "not allowed to touch that shit" because "he could get in trouble") and "who would give that idiot a gun?" Kekahuna was warned that lying to a federal agent was a felony, but she again insisted Meier's fingerprints or DNA would not be on the gun.

Later that day, after the recorded interview ended, Kekahuna was unable to answer basic questions about the gun, including the caliber, and how the safety worked.

MEIER was not located that day, but was finally arrested about two weeks later after running from sheriff's deputies who were conducting a wellness check at

PLEA AGREEMENT - 6

his and Kekahuna's residence. When Kekahuna answered the door she falsely told the sheriff's deputy that Meier was not present at the residence.

An ATF special agent subsequently obtained a federal search warrant for MEIER's DNA and the Washington State Patrol crime lab compared MEIER's DNA sample to a mixture of DNA found on both the KelTec pistol and the holster holding the pistol. The lab opined that there was very strong support for the proposition that MEIER was a contributor to the DNA mixture found on the pistol (740 septillion times more likely than) and the holster (75 trillion times more likely than not).

An ATF special agent contacted various Spokane-area pawn shops, including Pawn One and Double Eagle Pawn, the pawn shops that Kekahuna, at various times, told agents was where she had purchased the KelTec 9mm pistol. The pawn shops reported to the ATF that they had no record of Kekahuna purchasing the KelTec 9mm pistol recovered from her person on December 7, 2023.

The KelTec 9mm pistol described above has been researched by a nexus expert with the ATF, and has been determined to have been manufactured outside the state of Washington, and therefore traveled in and affected interstate or foreign commerce.

Defendant stipulates and agrees that the above detailed criminal conduct occurred within the Eastern District of Washington. Defendant acknowledges and admits that the pistol found on her person belonged to MEIER and she lied to the ATF to protect MEIER, as she knew MEIER was a felon and could not possess a firearm. Accordingly, Defendant also agrees that her statements to the ATF regarding whether the pistol belonged to MEIER, whether MEIER ever possessed the pistol, and claiming to have purchased the firearm were all false statements and dealt with a matter within the jurisdiction of the ATF because MEIER was a felon under federal law and his possession or ownership of the pistol would be a federal crime (18 U.S.C. § 922(g)(1)).

PLEA AGREEMENT - 7

Defendant also agrees that she deliberately made the false statements to the ATF special agents and she had knowledge both that the statements were untrue and that making such false statements was unlawful. Furthermore, defendant also acknowledges that the statements were material to the decisions or activities of the ATF.

8.    The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving the illegal activity charged in the Indictment, unless Defendant breaches this Plea Agreement before sentencing. The United States further agrees to dismiss any remaining counts charged against Defendant in the Indictment filed on January 8, 2025.

9.    United States Sentencing Guideline Calculations:

Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "USSG" or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations:

a. *Base Offense Level and Special Offense Characteristics*:

The United States and Defendant agree that the base offense level for False Statement is 6. USSG §2B1.1(a)(2). The parties further agree that the offense level is increased to 14 pursuant to USSG §2B1.1(b)(16)(B).

b. *Zero-Point Offender*:

The United States and Defendant acknowledge that Defendant is not eligible for the "zero-point offender" provision of USSG §4C1.1 because Defendant possessed a firearm.

PLEA AGREEMENT - 8

c. *Acceptance of Responsibility*:

The United States will recommend that Defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a), if Defendant does the following:

    i.    accepts this Plea Agreement;

    ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

    iv.    provides complete and accurate information during the sentencing process; and

    v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

d. *Criminal History*:

The United States and Defendant have made no agreement and make no representations as to Defendant's Criminal History Category, which shall be determined by the Court at sentencing after the Presentence Investigation Report is completed.

e. *Agreement Regarding Representations to the Court:*

The United States has a duty of candor to the tribunal. If the United States and Defendant do not agree on the appropriate length of incarceration, the appropriate length or applicable terms of supervised release, and/or the correct guidelines calculations, variances, departures, and/or enhancements, the United

PLEA AGREEMENT - 9

States reserves the right to respond to any and all arguments made by Defendant, on any bases the United States deems appropriate, at all stages of this criminal case.

Defendant may make any arguments it deems appropriate, at all stages of this criminal case.

With regard to all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

    i.    The United States and Defendant may each respond to any questions from the Court or United States Probation Office;

    ii.    The United States and Defendant may each supplement the facts under consideration by the Court by providing information the United States or Defendant deems relevant;

    iii.    The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

    iv.    The United States and Defendant may each present and argue information that may already be known to the Court, including information contained in the Presentence Investigation Report;

    v.    The United States and Defendant may each respond to any arguments presented by the other;

    vi.    In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence

PLEA AGREEMENT - 10

recommended by the United States on any basis, including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

vii. In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

viii. The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and

ix. Defendant may make any sentencing arguments consistent with this Plea Agreement that Defendant deems appropriate.

f. *No Other Agreements*:

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or

PLEA AGREEMENT - 11

variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

10. Length of Incarceration:

The parties are free to argue for any lawful sentence, except the United States agrees not to recommend a sentence above six (6) months of imprisonment.

11. Supervised Release:

The United States and Defendant each agree to recommend three (3) years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

      (a) Defendant shall participate and complete such drug testing and drug treatment programs as the Probation Officer directs; and

      (b) The United States Probation Office may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, office, vehicles, belongings, and areas under Defendant's exclusive or joint control.

12. Criminal Fine:

The United States and Defendant agree to recommend the Court impose no criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered

PLEA AGREEMENT - 12

by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

13.     Mandatory Special Penalty Assessment:

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

14.     Payments While Incarcerated:

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

15.     Additional Violations of Law Can Void Plea Agreement:

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

16.     Waiver of Appeal and Collateral Attack Rights:

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court. Defendant expressly waives Defendant's right to appeal Defendant's conviction and/or sentence. Defendant also expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

PLEA AGREEMENT - 13

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

17.   Withdrawal or Vacatur of Defendant's Plea:

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

a.   this Plea Agreement shall become null and void;

b.   the United States may prosecute Defendant on all available charges;

c.   the United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

d.   the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

PLEA AGREEMENT - 14

18. Integration Clause:

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

## Approvals and Signatures

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Richard R. Barker
Acting United States Attorney

_____          _____6/10/25_____
Nowles Heinrich                                   Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement, and no one has threatened or

PLEA AGREEMENT - 15

forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

x _____      Date ___6/10/25___
DESIREE L. KEKAHUNA
Defendant

I have read the Plea Agreement and have discussed the contents of the Plea Agreement with Defendant. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in Defendant's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's plea of guilty.

_____      Date ___6/10/25___
Bryan P. Whitaker, Esq.
Attorney for the Defendant

PLEA AGREEMENT - 16